**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **SUSAN VALENTE,**<br>**PLAINTIFF**<br><br>**v.**<br><br>**LINCOLN NATIONAL CORPORATION, d/b/a**<br>**LINCOLN FINANCIAL GROUP**<br>**DEFENDANT** | : | **CIVIL ACTION NO.**<br><br><br><br><br><br><br><br>**APRIL 28, 2009** |

# COMPLAINT

## INTRODUCTION

1. This is an action for compensatory damages, liquidated damages, attorneys' fees and costs, as well as other relief available in law or equity arising out of harassment and discrimination against Plaintiff in the terms and conditions of her employment, as well as Defendant's decision to terminate Plaintiff's employment, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-58 *et seq.* ("CFEPA"), and in retaliation for having exercised rights afforded under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA")

## II. THE PARTIES

2. Plaintiff, Susan Valente, is an individual residing in Pleasant Valley, Connecticut. Plaintiff's date of birth is March 11, 1957. Plaintiff is entitled to protection under the ADA and the CFEPA as she has an association with a person with a disability, as her husband suffers from a disability, as that term is defined under both the ADA and the CFEPA. In addition, Plaintiff suffered from a disability, as that term is defined under both the ADA and the CFEPA. Plaintiff

and her husband also have a record of a disability, and Defendant regarded them as disabled. Plaintiff is also an eligible employee as that term is defined under the FMLA.

3. Defendant, Lincoln National Corporation d/b/a Lincoln Financial Group, is a corporation that engages in interstate commerce and that transacts business in the State of Connecticut. Defendant has offices at 350 Church Street, Hartford, CT 06103. Defendant employs more than 500 employees at that location, and/or within 75 miles of that location. At all times relevant to this Complaint, Defendant was Plaintiff's employer, and Defendant is an employer subject to the requirements of the ADA, the CFEPA, and the FMLA.

## III. JURISDICTION

4. The United States District Court for the District of Connecticut has subject matter jurisdiction over this action under the provisions of Section 7(b) of the ADEA, 29 U.S.C. § 626(b), and 28 U.S.C. § 1331 to enforce the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*, The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## IV. PROCEDURAL REQUIREMENTS

6. On or about May 22, 2008, Plaintiff filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), which in turn filed Plaintiff's charges with the Equal Employment Opportunities Commission ("EEOC"). Plaintiff's charge was designated as CHRO No. 0810435, and EEOC No. 16a-2008-01169, respectively.

7. On February 20, 2009, the CHRO issued a release of jurisdiction to Plaintiff on her claims contained in her charge of discrimination. On April 22, 2009, EEOC issued a right to sue to Plaintiff on her claims contained in her charge of discrimination. Plaintiff has commenced this action within ninety (90) days of receiving said letters from the CHRO and EEOC.

**V. FACTUAL BACKGROUND**

8. Plaintiff commenced her employment with Defendant's predecessor in August of 1976.

9. Through a series of mergers and acquisitions, Connecticut General became known as Lincoln National Corporation d/b/a Lincoln Financial Group in 1998.

10. During her tenure with Defendant, and its predecessors, Plaintiff held a number of positions, including positions in compliance, since 1998.

11. During her employment, Plaintiff received numerous promotions, pay increases, bonuses, commendations, and - - until January 2008 - - consistently favorable performance reviews. Plaintiff ascended to the position of Director, Compliance Training and Education, a title she held until she was demoted in approximately July 2007. After that date, her title became Senior Compliance Manager, and she retained that title until the termination of her employment on March 4, 2008.

12. In 2001, Plaintiff's husband was diagnosed with Early Onset Alzheimer's disease, which resulted in a severe deterioration of his mental faculties and, ultimately, his ability to care for himself. Plaintiff's husband is a disabled person within the meaning of the ADA and the CFEPA, and he suffers from a serious health condition within the meaning of the FMLA.

13. Plaintiff notified Defendant of her husband's medical condition in 2001, during which time Plaintiff reported to Holly Buckland. Ms. Buckland was supportive and proposed

that Plaintiff incorporate telecommuting into her work schedule so that she could more effectively care for, and provide support to, her husband.

14. In approximately April of 2006, Ms. Buckland's employment with Defendant terminated, and Defendant assigned a new manager - - Paula Mango - - to Plaintiff.

15. Shortly after Plaintiff began reporting to Ms. Mango, she notified Ms. Mango of her husband's chronic medical condition, which by that time had significantly worsened, necessitating daily medical supervision and day care.

16. From the outset, Ms. Mango was openly skeptical of the telecommuting arrangement but conceded that she would "give it a shot" to see if it would work from her standpoint.

17. In approximately January of 2007, Ms. Mango instructed Plaintiff to reduce her telecommuting from three days per week to two days per week.

18. In February of 2007, Plaintiff's husband was hospitalized as a result of his worsening condition. When Plaintiff notified Ms. Mango of her husband's hospitalization and requested modifications to her schedule to allow time for visitation, Ms. Mango was very dismissive and unsupportive, and she openly challenged Plaintiff's need to visit her husband in the hospital.

19. Shortly after Plaintiff's husband was hospitalized, Ms. Mango began removing job responsibilities and authority from Plaintiff, and assigning her tasks that were more menial and administrative in nature.

20. During the course of 2007, Ms. Mango became increasingly critical of Plaintiff's work product, began monitoring Plaintiff's work and attendance more closely, and began making comments suggesting that she perceived that Plaintiff lacked commitment to her job and career.

Ms. Mango became increasingly reluctant to accommodate Plaintiff's requests for personal time so that she could care for her ailing husband.

21. Thereafter, as a consequence of events in Plaintiff's personal life as well as at her employment, she began to suffer bouts of depression, anxiety, and panic episodes. Plaintiff began seeking medical attention in the Spring of 2007 and shortly thereafter was prescribed medication to treat those conditions. During this time, Plaintiff was diagnosed with depression and anxiety. Therefore, Plaintiff also suffered from a disability within the meaning of the ADA and the CFEPA.

22. On approximately April 20, 2007, Plaintiff complained to Kelly Davis, an Assistant Vice President for Human Resources employed by Defendant, that Ms. Mango was subjecting her to harassment and discrimination because of her need to take care of, and support, her husband.

23. Ms. Davis essentially told Plaintiff that she was free to look for another job.

24. In July of 2007, Defendant, through Ms. Mango, wrongfully demoted Plaintiff, and changed her title from Director to Senior Compliance Manager.

25. Plaintiff complained to Jeff Smith, Vice President of Compliance, during that same time period about her demotion, the removal of her job responsibilities, and the way that Ms. Mango treated Plaintiff with respect to her need to take care of her husband. At that time, Mr. Smith told Plaintiff that she would never get another salary increase.

26. Shortly after said demotion, management directed Plaintiff to fill out an official "telecommuting" application form - - notwithstanding the fact that there are a number of individuals employed by Defendant who telecommute and were not required to fill out a "telecommuting" application form. As of the date of Plaintiff's termination, March 4, 2008, she

had not received a response to her application. Defendant treated Plaintiff differently than other individuals because she requested telecommuting in order to care for her disabled husband.

27. Ms. Mango advised Plaintiff in writing that she was required to take and pass a Series 7 examination and a Series 24 Examination in order to continue her employment with Defendant, despite the fact that neither a Series 7 nor a Series 24 registration was required for Plaintiff's position.

28. In September of 2007, as a consequence of ongoing harassment and scrutiny by Ms. Mango, Plaintiff's psychological and emotional condition deteriorated to the point that her treating clinician directed her to cut back on her work hours. In accordance with those instructions, Plaintiff took intermittent leave under the FMLA.

29. Then, in November 2007, as a further consequence of continuing harassment and scrutiny by Ms. Mango, Plaintiff's treating clinician directed her to take a leave of absence from her employment. Therefore, on November 12, 2007, Plaintiff began a medical leave of absence, which lasted approximately eight (8) weeks in duration. During Plaintiff's leave of absence, Plaintiff applied for short term disability benefits, which she received until she returned to work on January 7, 2008.

30. Immediately after returning to work in January of 2008, Ms. Mango informed Plaintiff that she was required to take and pass the Series 7 and Series 24 examinations by February 29, 2008, and that if she failed to take and pass both exams by that deadline, Defendant would terminate her employment.

31. In late January 2008, Plaintiff received the worst performance evaluation that she ever received in her 31 years of employment Defendant, and its predecessors.

32. Plaintiff objected to the flawed, unfair, and inaccurate appraisal of her performance, thereby exercising her rights under Conn. Gen. Stat. § 31-128e.

33. Plaintiff complained again to Kelly Davis, Assistant Vice President of Human Resources, and Jeff Smith, Vice President of Compliance, about the harassment and discrimination against her.

34. Despite continuing to suffer from anxiety and depression, and being under extraordinary pressure as a consequence of being issued an ultimatum by Ms. Mango, Plaintiff studied for and took both the Series 7 and the Series 24 Examinations.

35. While Plaintiff was successful in passing the Series 7 examination, she was not able to pass the Series 24 examination by the February 29, 2008 deadline imposed by Defendant.

36. Defendant did not provide Plaintiff another opportunity to take the Series 24 examination, despite the fact that, under company policy and practice, employees who are required to take those examinations are afforded three (3) attempts to pass.

37. Accordingly, on March 4, 2008, after 31 years of service, Defendant terminated Plaintiff's employment.

38. After her termination, Defendant failed to pay Plaintiff compensation and employment benefits to which she should have been entitled.

39. Defendant's explanation for its decision to terminate Plaintiff's employment is pretext.

40. Defendant treated Plaintiff less favorably than other similarly situated individuals who did not have an association or relationship with a person suffering from a disability, and Defendant replaced Plaintiff with an individual who does not have an association or relationship with a person suffering from a disability.

41. Defendant treated Plaintiff less favorably than other similarly situated individuals who did not suffer from a disability, and Defendant replaced Plaintiff with an individual who does not suffer from a disability.

42. Defendant treated Plaintiff less favorably than other similarly situated individuals who are substantially younger than Plaintiff, and Defendant replaced Plaintiff with an individual who is substantially younger than Plaintiff.

43. Defendant treated Plaintiff less favorably than other similarly situated individuals who did not exercise their rights under the FMLA.

44. Defendant treated Plaintiff less favorably than other similarly situated individuals who did not exercise their rights to a reasonable accommodation under the ADA and CFEPA.

45. Defendant treated Plaintiff less favorably than other similarly situated individuals who did not complain about or oppose discriminatory employment practices.

**COUNT ONE: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. §621 *et seq.***

46. Based on the foregoing, Defendant discriminated against Plaintiff on the basis of her age in violation of the ADEA.

47. Defendant discriminated against Plaintiff by harassing her, subjecting her to disparate treatment, demoting her, removing her job responsibilities, terminating her employment, and failing to provide her compensation and employment benefits to which she should have been entitled.

48. Defendant's actions against Plaintiff were willful, thereby entitling Plaintiff to liquidated damages.

49. As a result of Defendant's actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost promotional opportunities, and lost employment benefits.

50. Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

**<u>COUNT TWO</u>: AGE DISCRIMINATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60 *et seq.***

51. Based on the foregoing, Defendant discriminated against Plaintiff on the basis of her age in violation of the CFEPA.

52. Defendant discriminated against Plaintiff by harassing her, subjecting her to disparate treatment, demoting her, removing her job responsibilities, terminating her employment, and failing to provide her compensation and employment benefits to which she should have been entitled.

53. Defendant discriminated against Plaintiff with malice or reckless indifference to Plaintiff's rights under the law.

54. As a result of Defendant's actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost employment benefits, lost promotional opportunities, compensatory damages, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

55. Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

**COUNT THREE: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.***

56. Based on the foregoing, Defendant discriminated against Plaintiff on the basis of her disability, and/or because she had a relationship or association with a disabled person in violation of the ADA.

57. Defendant discriminated against Plaintiff by harassing her, subjecting her to disparate treatment, demoting her, removing her job responsibilities, terminating her employment, and failing to provide her compensation and employment benefits to which she should have been entitled.

58. Defendant discriminated against Plaintiff with malice or reckless indifference to Plaintiff's rights under the law.

59. As a result of Defendant's actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost employment benefits, lost promotional opportunities, compensatory damages, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

60. Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

**COUNT FOUR: DISABILITY DISCRIMINATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60, *et seq.***

61. Based on the foregoing, Defendant discriminated against Plaintiff on the basis of her disability and/or because she had a relationship or association with a disabled person in violation of the CFEPA.

62. Defendant discriminated against Plaintiff by harassing her, subjecting her to disparate treatment, demoting her, removing her job responsibilities, terminating her

employment, and failing to provide her compensation and employment benefits to which she should have been entitled.

63. Defendant discriminated against Plaintiff with malice or reckless indifference to Plaintiff's rights under the law.

64. As a result of Defendant's actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost employment benefits, lost promotional opportunities, compensatory damages, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

65. Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

**COUNT FIVE: RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2601 *et seq.***

66. Based on the foregoing, Defendant retaliated against Plaintiff because she exercised her rights in violation of the FMLA.

67. Defendant retaliated against Plaintiff by interfering with her substantive rights guaranteed by the FMLA, harassing her, subjecting her to disparate treatment, demoting her, removing her job responsibilities, terminating her employment, and failing to provide her compensation and employment benefits to which she should have been entitled.

68. Defendant's actions against Plaintiff were willful, thereby entitling Plaintiff to liquidated damages.

69. As a result of Defendant's actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost promotional opportunities, and lost employment benefits.

70. Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

**COUNT SIX: RETALIATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60 *et seq.***

71. Based on the foregoing, Defendant retaliated against Plaintiff because she complained about harassment and discriminatory employment practices in violation of the CFEPA, and because she exercised her right to request a reasonable accommodation.

72. Defendant retaliated against Plaintiff by harassing her, subjecting her to disparate treatment, demoting her, removing her job responsibilities, terminating her employment, and failing to provide her compensation and employment benefits to which she should have been entitled.

73. Defendant discriminated against Plaintiff with malice or reckless indifference to Plaintiff's rights under the law.

74. As a result of Defendant's actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost employment benefits, lost promotional opportunities, compensatory damages, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

75. Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

**COUNT SEVEN: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.***

76. Based on the foregoing, Defendant retaliated against Plaintiff because she complained about harassment and discriminatory employment practices in violation of the ADA, and because she exercised her right to a reasonable accommodation.

77. Defendant retaliated against Plaintiff by harassing her, subjecting her to disparate treatment, demoting her, removing her job responsibilities, terminating her employment, and

failing to provide her compensation and employment benefits to which she should have been entitled.

78. Defendant discriminated against Plaintiff with malice or reckless indifference to Plaintiff's rights under the law.

79. As a result of Defendant's actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost employment benefits, lost promotional opportunities, compensatory damages, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

80. Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

**COUNT EIGHT: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

81. Based on the foregoing, Defendant illegally terminated Plaintiff's employment in violation of an important public policy of the State of Connecticut.

82. Connecticut General Statutes Section 31-128e embodies an important public policy of the State of Connecticut. That statute guarantees that employees have a right to object to statements about their performance that they consider inaccurate or unfair, and it requires employers to maintain an employee's written response as part of their personnel files.

83. Plaintiff exercised her rights under Conn. Gen. Stat. § 31-128e in response to the January 2008 performance evaluation prepared by Ms. Mango.

84. Shortly thereafter, Defendant terminated Plaintiff's employment, and Plaintiff's exercise of rights guaranteed by § 31-128e was a motivating factor in Defendant's decision to terminate her employment.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiff claims JUDGMENT against Defendant and,

Compensatory damages, including, but not limited to,

1. lost wages, lost promotional opportunities, lost employment benefits, loss of enjoyment of life, emotional distress, humiliation, and embarrassment;

2. Back Pay;

3. Reinstatement, or Front Pay;

4. Liquidated damages;

5. Punitive damages;

6. Interest;

7. Attorney's fees;

8. Such other relief as in law or equity may pertain.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Plaintiff, Susan Valente

By: _____/s/Todd D. Steigman_________

Todd D. Steigman (ct26875)
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06106
Tel. (860) 246-2466 Fax. (860) 246-1794
tsteigman@mppjustice.com