UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN VALENTE, | : |
| Plaintiff, | : |
| v. | : NO. 3:09cv693 (MRK) |
| LINCOLN NATIONAL CORP. d/b/a LINCOLN FINANCIAL GROUP, | : |
| Defendant. | : |

## RULING AND ORDER

One frequently hears complaints that the discovery process in American courts is out of control. *See, e.g.*, Stephen N. Subrin, *The Limitations of Transsubstantive Procedure: An Essay on Adjusting the "One Size Fits All" Assumption*, 87 Denv. U. L. Rev. 377, 403 (2010) ("It has been amply demonstrated that . . . uncontrolled discovery often spins out of control in terms of time and expense, with little or no additional benefit to the litigation process."). This Court's experience is to the contrary. The discovery process – while rarely pleasant – actually works quite well when the attorneys for all the parties, consistent with their dual roles as both advocates for their clients and officers of the Court, are willing to cooperate with one another and act reasonably and in accordance with the *Federal Rules of Civil Procedure*. The discovery process only spins out of control – and requires Court intervention – in those rare cases in which attorneys overlook their dual roles as advocates and officers of the Court, and refuse to cooperate and act reasonably.[1]

---

[1] Recent surveys conducted by the Federal Judicial Center show that when counsel fail to cooperate in discovery, the costs of discovery skyrocket. *See* Emery G. Lee III & Thomas E. Willging, Fed. Judicial Ctr., National Case-Based Civil Rules Survey 2 (2009) ("A majority of respondents reported that the parties were able to reduce the cost and burden of discovery by

1

Plaintiff Susan Valente filed this lawsuit against her former employer, Lincoln National Corp., on April 28, 2009. Under the original Case Management Order in this case, discovery was scheduled to be completed no later than April 1, 2010. *See* Order [doc. # 20] dated September 3, 2009. However, the parties had a number of discovery-related disputes and found themselves unable to complete discovery by that deadline. *See* Joint Status Report [doc. # 47] dated April 6, 2010. The Court therefore agreed to extend the deadline for fact discovery in this case until September 15, 2010 and to also extend the deadline for expert witness discovery until October 15, 2010. *See* Order [doc. # 71] dated August 19, 2010.

The purpose of this Ruling and Order is to resolve a remaining discovery dispute and – the Court hopes – thus to enable the parties to complete fact discovery in a timely fashion without further disputes. With the deadline for fact discovery quickly approaching, counsel for Ms. Valente challenged counsel for Lincoln National's inclusion of several email communications to and from Lincoln National's in-house counsel on the privilege log. During a telephonic conference with counsel for both parties, the Court determined that a number of emails that counsel for Lincoln National included on the privilege log were sent for the sole purpose of sharing factual information, rather than for the purpose of obtaining or providing legal advice, and were therefore not protected by the attorney-client privilege. *See* Transcript of Proceedings [doc. # 76] held on August 17, 2010.

---

cooperating."), *available at* http://www.fjc.gov/ public/ pdf.nsf/lookup/FJC_Civil_Report_Sept _2009.pdf/$file/FJC_Civil_Report_Sept_2009 .pdf; Emery G. Lee III & Thomas E. Willging, Fed. Judicial Ctr., Litigation Costs in Civil Cases: Multivariate Analysis 5, 7 (2010) ("For each dispute over [discovery], the party had approximately 10% higher costs, all else equal."), *available at* http://civilconference.uscourts.gov/LotusQuickr/dcc/Main.nsf/$defaultview/ A6B71E18F14D17AA8525770700486E15/$File/FJC%2C%20Litigation%20Costs%20in%20Ci vil%20Cases%20-%20Multivariate%20Analysis.pdf ?OpenElement. Although attorneys who engage in endless discovery disputes may believe they are merely engaged in zealous advocacy on behalf of their clients, such increases in costs are ultimately to the detriment of clients.

The Court therefore permitted counsel for Ms. Valente to select an additional thirty documents from the privilege log for the Court to review *in camera*. Counsel for both parties also sought the Court's advice on one additional document that counsel for Lincoln National had disclosed inadvertently.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). The purpose of the privilege is to encourage full and frank communication between attorneys and their clients, and thereby to promote "broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). However, because there is a countervailing public interest in ensuring materials relevant to legal disputes are discoverable, courts construe the attorney-client privilege narrowly, *see County of Erie*, 473 F.3d at 418, and apply it "only where *necessary* to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (emphasis added).

The standard for determining whether a particular communication is protected by the attorney-client privilege is not complex. A communication is protected by the attorney-client privilege if (a) it was a communication between client and counsel; (b) it was intended to be kept confidential and actually was kept confidential; and (c) it was made for the purpose of obtaining or providing legal advice. *See County of Erie*, 473 F.3d at 419. The party invoking the privilege bears the burden of establishing all of the elements of the privilege. *See United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997).

While the standard for determining whether a communication is protected by the attorney-client privilege is straightforward, the application of that standard sometimes requires nuance. The line between legal advice and non-legal advice is hazy. In particular, the line between business

3

advice and legal advice is blurry when an attorney work in-house for a corporate client. *See County of Erie*, 473 F.3d at 419. In the specific context of communications to and from corporate in-house lawyers, courts therefore typically hold that a communication is privileged only if it was generated for the *predominant purpose* of rendering or soliciting legal advice. *See id.* at 420 & n.7 (citing, *inter alia*, 24 Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure* § 5490 (1986)). The Second Circuit recently expounded on the meaning of "predominant purpose":

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks, and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. So long as the *predominant purpose* of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it. The predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be asserted dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

*County of Erie*, 473 F.3d at 420-21.

This Court is confident that under the predominant purpose test, it is not enough for the party invoking the privilege to show that a communication from corporate personal to in-house counsel communicated factual information that might become relevant to the future rendering of legal advice. Instead, the communication must also either explicitly or implicitly seek specific legal advice about that factual information. The Court believes that such a rule is necessary to protect against the possibility that "corporate clients could attempt to hide mountains of otherwise discoverable information behind a veil of secrecy by using in-house legal departments as conduits of otherwise unprivileged information." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust*

4

*No. 1B*, 230 F.R.D. 398, 411 n.20 (D. Md. 2005); *see also Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 388-92 (N.D. Okla. 2010). As New York's highest court observed more than two decades ago: "[T]he need to apply [the privilege] cautiously is heightened in the case of corporate staff counsel, lest the *mere participation* of an attorney be used to seal off disclosure." *Rosi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 593 (1989) (emphasis added). In sum, it cannot be that *every* e-mail sent to an in-house lawyer is automatically privileged.

With that rule in mind, the Court concludes that the thirty-one emails at issue in this case fall into four broad categories. The first category consists of emails from Lincoln National personnel to Lincoln National's in-house counsel explicitly seeking legal advice, or emails from in-house counsel to personnel explicitly providing legal advice. Nearly two-thirds of the emails – emails 2, 4, 5, 6, 8, 9, 10, 11, 13, 14, 15, 16, 17, 19, 23, 24, 27, 28, and 29 – belong in that category. Lincoln National has borne its burden of showing that those emails are privileged, as it is plain from the content of the emails that their purpose was to ask for or to provide legal advice.

The second category consists of emails from Lincoln National's personnel simply forwarding developing factual information on to in-house counsel. Seven of the emails – emails 1, 3, 4, 7, 12, 18, and 30 – belong in that category. The Court is not satisfied that those emails are privileged. Although Lincoln National's counsel has asserted that the purpose of those emails was to obtain legal advice, it is not at all clear from the content of the emails or from the context of those emails that the purpose of the emails was to elicit specific legal advice. Instead, it appears that Lincoln National personnel simply made a habit of copying in-house counsel (along with many other individuals) on any email that included factual information that might become relevant to a possible claim.

Counsel for Lincoln National has not provided the Court with any additional evidence

5

regarding the purpose of those seven emails.  Keeping in mind that the party seeking application of the privilege bears the burden of persuasion, the Court will not simply draw an inference that the purpose of *every* communication from Lincoln National's personnel to in-house counsel was for the purpose of seeking legal advice.  Defense counsel appears to take the position that any email that is copied to in-house counsel and that contains information that may become relevant to a future claim is always privileged.  As the Court has already discussed, that is not now and has never been the law.

The third category consists of emails from Lincoln National personnel to in-house counsel providing factual information and *also* either implicitly or explicitly seeking legal advice from counsel.  Three emails -- emails 20, 21, and 26 -- fall into the third category.  Email 20 is an email providing counsel with detailed notes about a meeting.  It was not sent to any other person, and it is apparent from the context that this detailed information was provided for the purpose of enabling counsel to provide legal advice.  Email 21 is an email forward much like those in the second category, but it also contains a request asking counsel for advice about how to proceed in response to the forwarded information.  Email 26 is a draft of a document, and it is apparently from the context that the draft was sent to counsel with an implicit request to provide feedback and comments about the draft.  Those communications are all privileged.

The fourth category consists of emails the purpose of which the Court has been unable to determine from either their content or their context.  The Court is simply unable to determine what the purpose of those two emails – 22 and 31 – might be.  Furthermore, is not even clear to the Court that email 31 is actually a communication between client and counsel.  The Court therefore concludes that Lincoln National has not borne its burden of showing that those emails 22 and 31 are protected by the attorney-client privilege.

In light of this Ruling, the Court encourages counsel for Lincoln National to take a second look – and perhaps even a third look – at its privilege log in order to determine whether it can bear the burden of showing that *all* the documents this Court has not yet reviewed are truly privileged. If Lincoln National's counsel has further information to bring to the Court's attention about the purposes of the emails this Court has determined are not privileged, they should bring that information to the Court's attention no later than September 17, 2010.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **September 2, 2010.**